———————o———————

No. 2975.

(Court of Appeal, Parish of Orleans).

CITY OF NEW ORLEANS, Appellee, vs. DRAINAGE COMMISSION OF NEW ORLEANS, Appellant, C. F. CULLOM & COMPANY, called in warranty, Appellee.

1. The Drainage Commission of New Orleans is a separate and distinct Corporation from that of the City of New Orleans and liable by the latter for reimbursement of damages done to its property by the former. 49 A. 1199. 45 A. 1896.

2. Where damages are caused in execution of its contracts, which damages could have been avoided by prudence, and want of neglect and silence during their actuality, the plea of "damnum absque injuria" will not prevail. The tacit aquiescence of a principal in the wrong-doing of his agent (which wrong-doing in this case is disclaimed by the agent, a contractor bound by contract and specifications) will discharge the latter. R. C. C. 1811, 24 A. 461. 41 A. 435.

Appeal from Civil District Court, Division B.

H. G. Dupre, Lapeyre, Monroe & Breazeale, Plaintiff and Appellees.

P. S. Benedict and Sol Wolff, for Warrantors.

Carleton Hunt, Defendant and Appellant.

Omer Villere.

BEAUREGARD, J. The judgment appealed from held the defendant and appellant bound for the amount sued for, to-wit: $316, with legal interest from judicial demand and exonerated from liability the firm of Collum & Company, defendants' contractors and agents, called in warranty.

The question at issue is whether or not the amount claimed can be recovered of the defendant; and if affirmatively recognized it should not extend in defendant's favor to the latter's contractors.

Pursuant to its mission and as its title implies, the defendant Commission undertook the necessary execution for the construction of a covered drainage culvert between St. Andrew street and Louisiana avenue, on St. Charles avenue.

Lining this avenue on the river side of the neutral ground, and near which these excavations were to be made, were a number of maple and oak trees planted by (and under the supervision of) the St. Charles Avenue Commission, a body sanctioned by the city authorities, with the funds placed at its disposal by the city and property owners for embellishment of this avenue. The result, however, of these excavations and their completion was the destruction of 53 of these trees and an outlay of $50, paid by the city or St. Charles Avenue Commission to save some other of these trees. Those destroyed were estimated to be worth $5 a piece, hence the present suit to recover their value and the outlay referred to.

The Drainage Commission urges, and seemingly rests, on the plea of "damnum absque injuria," and the contractors called in warranty on an exception, which it was stated in argument was missing in the record, which would be supplied by consent of parties

but which was never produced, and which we take it from their briefs amounted to a disclaimer of any liability under the call.

The Drainage Commission is a separate and distinct corporation from the municipal one or its departments, created for the public good or to promote the public health; it has all the necessary corporate powers to effect the drainage of the city " to contract for the materials, labor and supplies requisite, employ engineers and other needful agents, and to do all things requisite for this drainage"; disposing of the funds; the proceeds of sale of city franchises and of that part of the fund in the hands of the Board of Liquidation, and installed with the power of issuing bonds to procure additional means. 49 A. 1200.

Hence the amenability of the Drainage Board to the judicial process of the city, a corporation different from it.

Now, it may well be conceived that where any drainage contract is entered into by the Drainage Commission which in its execution must work necessary and unavoidable damages, the plea of injury without loss must prevail. Otherwise, where these damages can be obviated; where means exist to prevent them or to minimize them and their actuality is brought home to the knowledge of the contractee who remains passively indifferent, then the plea would be of no avail.

In this case it is shown that as soon (or shortly thereafter) as the President of the St. Charles Avenue Commission discovered the damage being done to the trees of the avenue, he brought this fact not only to the knowledge of the Drainage Commission, but to that of the Mayor and the contractors, but without avail. That he urged the adoption of such precautionary measures as could and would have averted actual and further damage; and that this could have been done had the trees been at all properly boxed; or had they been ordered by the engineer supervising the work taken up and removed for replanting as the engineer was competent to do so direct but this was not done, and the trees were, as stated, injured and some destroyed. The plea, therefore, cannot prevail.

With respect to the firm called in warranty, it may be true that it, as defendant's representatives and agents, did not use such precautionary measures as would have averted the injury sued for, but these agents assert that, as contractors, they were compelled, under the specifications, to follow the lines and levels of defendant's engineers; that their excavations were laid to be only four feet from the trees where the wall would be, with an additional excavation of a foot for the back filling, thus bringing the excavations within three feet of the trees; that their desire was to make these excavations in the centre of the street, which was not heeded, and that, if the space between the trees

and their back sheating (i. e. next to the wall) was not filled, the delay was due to the engineers who wished the cement to settle. That the earth between the trees-and the back sheating crumbled away and some of these trees toppled over exposing their roots and some sinking. And they further assert that no boxing of these trees would have saved them; that no nails were by their employees driven in the trees and that if any materials, in the way of dirt, were piled against them, they were removed as soon as possible.

The evidence of record is barren in showing either that the defendant or their surpervising engineers directed, or called the attention of the contractors to the adoption of such measures as would save these trees from injury or destruction.

It is again true that, according to a dictated copy of the terms of the contract, existing between these contractors and the defendant, the former held themselves responsible for the payment of all loss. detriment, injury or damage to any property, public or private, etc.. and to indemnify and hold harmless the defendant against all claims, judgments and damages, costs and expenses which may in any wise (i. e. in the prosecution of their work) come against said commission, etc.

But this clause is not understood as doing away with the requirements of the law of agency, where the knowledge of the wrongdoing of the agent is brought home to the principal who remains quiescent. And which wrong-doings, in this case, the agents disclaimed as being bound, as stated before, by the specifications and under the supervision of defendants engineers.

A number of authorities hold that: "The principle is well settled that the obligation of the agent whose authority is limited by instructions is to adhere faithfully to these instructions. To exceed these instructions, and it may be added, to fail to give others correcting the wrong-doing when so apprised is in the principal implied assent which discharges the agent. R. C. 1811. 24 A. 460. 41 A. 435.

No data as to the plea of prescription, as to the efficiency or nonefficiency of which the briefs of plaintiff and of defendant make mention, is of record, and does not consequently call for notice.

No error appears in the conclusion reached by the trial Court, and its decree herein is affirmed.

Dufour, J., concurs and files a separate opinion.

Moore, J., dissents on the ground that the damage done is " damnum absque injuria," and reserves the right to file a separate opinion.

November 9th, 1903.

# CONCURRING OPINION.

1. The right of the Drainage Commission to use the streets as an incident to construction carries with it the correlative obligation to restore them to their former condition, and to repair any damage that may have been caused.

2. The law does not contemplate in such a case "damnum absque injuria," whether the property injured be municipal or private, compensation must be made for such injury out of the drainage fund, which is clearly intended to pay for the destruction incidental to the construction.

DUFOUR, J.    Act 114 of 1896, and the amendments to it by Acts 80 of 1898 and 72 of 1900, look to the creation of a Commission to take charge of the drainage of the city and set apart a fund to be applied to that purpose.    Such fund is to be used solely for the construction permanent of public works, and the city is to bear the expense of their operation also solely.

The right to use the streets as an incident to construction carries with it the correlative obligation to restore them to their former condition, and to repair any damage that may have been caused.    The law does not contemplate "damnum absque injuria" whether the property injured be municipal or private compensation must be made out of the drainage fund, which was clearly intended to pay for the destruction incidental to the construction.

Had the Statutes intended the city to bear the loss out of her specially assigned funds, they would have said so.    It is, in my view immaterial whether the commission was at fault or not.    I do not find that the contractors were at fault.    I, therefore, concur.

November 9th, 1903.